NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSE L. GARCIA,<br><br>                    Plaintiff,<br><br>          v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                    Defendant. | Civil Action No. 14-7736 (ES)<br><br>OPINION |

SALAS, DISTRICT JUDGE

Before the Court is Jose L. Garcia's ("Plaintiff" or "Claimant") appeal seeking review of Administrative Law Judge Dina R. Loewy's (the "ALJ" or "ALJ Loewy") decision denying Plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"). The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). The Court has subject matter jurisdiction pursuant to 42 U.S.C. § 405(g).

For the reasons set forth below, the Court VACATES ALJ Loewy's decision and REMANDS the case for further proceedings consistent with this Opinion.

## I.   BACKGROUND

On July 26, 2011, Plaintiff filed an application for DIB, alleging disability beginning on July 9, 2011. (D.E. No. 6, Administrative Record ("Tr.") at 164-65). The claim was denied initially on January 19, 2012 (*id.* at 111-15) and upon reconsideration on June 6, 2012 (*id.* at 118-20). Plaintiff subsequently filed a request for a hearing before an Administrative Law Judge on

June 14, 2012, which was granted.  (*Id.* at 121-30).  Plaintiff appeared and testified at a hearing held on October 11, 2012, before ALJ Loewy.  (*Id.* at 21).

At the hearing, Plaintiff first testified about his work history and education.  (*Id.* at 51-63). Plaintiff next testified about his impairments and the related treatments and medications he has received.  (*Id.* at 63-81).  Additionally, a vocational expert testified at the hearing.  (*Id.* at 82-90).

On May 20, 2013, ALJ Loewy issued a decision finding that Plaintiff was not disabled because his impairments did not meet or medically equal a listing and because Plaintiff could adjust to other work available in the national economy.  (*See id.* at 21-29).  Thereafter, on July 24, 2013, Plaintiff requested an Appeals Council review.  (*Id.* at 34-35).  On November 6, 2014, the Appeals Council found no grounds for review, making the ALJ's decision the final decision of the Commissioner of Social Security ("Defendant" or "Commissioner").  (*Id.* at 1-6).

Plaintiff appeals the Commissioner's decision in this case.  (D.E. No. 1).  The Court has received the administrative record.  (D.E. No. 6).  And the parties have briefed the issues raised by Plaintiff's appeal.  (*See* D.E. No. 11 ("Pl. Mov. Br."); D.E. No. 12 ("Def. Opp. Br.")).  The matter is now ripe for resolution.

## II.   LEGAL STANDARD

### A.  Standard for Awarding Benefits

To be eligible for DIB under Title II of the Act, a claimant must establish that he or she is disabled as defined by the Act.  *See* 42 U.S.C. § 423.  A claimant seeking DIB must also satisfy the insured status requirements set forth in § 423(c).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The

2

individual's physical or mental impairment(s) must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id.* § 423(d)(2)(A).

The Act has established a five-step sequential evaluation process to determine whether a plaintiff is disabled.  *See* 20 C.F.R. § 404.1520(a)(4).  If at any point in the sequence the Commissioner finds that the individual is or is not disabled, the appropriate determination is made and the inquiry ends.  *Id.*  The burden rests on the claimant to prove steps one through four.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).[1]  At step five, the burden shifts to the Commissioner.  *Id.*

**Step One.**  At step one, the claimant must demonstrate that he is not engaging in any substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).  Substantial gainful activity is defined as significant physical or mental activities that are usually done for pay or profit.  *Id.* § 404.1572 (a), (b).  If an individual engages in substantial gainful activity, he is not disabled under the regulation, regardless of the severity of his impairment or other factors such as age, education, and work experience.  *See id.* § 404.1520(b).  If the claimant demonstrates he is not engaging in substantial gainful activity, the analysis proceeds to the second step.

**Step Two.**  At step two, the claimant must demonstrate that his medically determinable impairment or the combination of impairments is "severe."  *Id.* § 404.1520(a)(4)(ii).  A "severe" impairment significantly limits a plaintiff's physical or mental ability to perform basic work activities.  *Id.* § 404.1520(c).  Slight abnormalities or minimal effects on an individual's ability to

---

[1]     Unless otherwise indicated, all internal citations and quotation marks are omitted, and all emphasis is added.

work do not satisfy this threshold. *See Leonardo v. Comm'r of Soc. Sec.*, No. 10-1498, 2010 WL 4747173, at *4 (D.N.J. Nov. 16, 2010).

***Step Three.*** At step three, the ALJ must assess the medical evidence and determine whether the claimant's impairment or combination of impairments meet or medically equal an impairment listed in the Social Security Regulations' "Listings of Impairments" in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 404.1520(a)(4)(iii). Upon a finding that the claimant meets or medically equals a listing, the claimant is presumed to be disabled and is automatically entitled to benefits. *Id.* § 404.1520(d).

When evaluating medical evidence in step three, an ALJ must give controlling weight to, and adopt the medical opinion of, a treating physician if it "is well-supported . . . and is not inconsistent with the other substantial evidence in [the] case record." *Id.* § 404.1527(c)(2). Not inconsistent does not mean that the opinion must be supported directly by all of the other evidence (i.e., it does not have to be consistent with all the other evidence) as long as there is no other substantial evidence that contradicts or conflicts with the opinion. *Williams v. Barnhart*, 211 F. App'x 101, 103 (3d Cir. 2006). Even where the treating physician's opinion is not required to be given controlling weight, the opinion is not necessarily rejected and may still be entitled to deference "depending upon the extent to which supporting explanations are provided." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). If there is conflicting medical evidence, "the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Id.*

4

*Step Four.* If a claimant is not found to be disabled at step three, the analysis continues to step four, in which the ALJ determines whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). An ALJ must consider all relevant evidence when determining an individual's RFC, including medical records, observations made during formal medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others. *Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001). If the claimant lacks the RFC to perform any work he has done in the past, the analysis proceeds.

*Step Five.* In the final step, the burden shifts to the Commissioner to show that there is a significant amount of other work in the national economy that the claimant can perform based on his RFC and vocational factors. *See* 20 C.F.R. § 404.1520(a)(4)(v).

### B.  Standard of Review

The Court must affirm the Commissioner's decision if it is "supported by substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988). "Substantial evidence does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). Although substantial evidence requires "more than a mere scintilla, it need not rise to the level of a preponderance." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). While failure to meet the substantial evidence standard normally warrants remand, such error is harmless where it "would have had no effect on the ALJ's decision." *Perkins v. Barnhart*, 79 F. App'x 512, 515 (3d Cir. 2003).

The Court is bound by the ALJ's findings that are supported by substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft*, 181 F.3d at 360. Thus, this Court is limited in its review because it cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

Regarding the ALJ's assessment of the record, the Third Circuit has stated, "[a]lthough the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000). The Third Circuit noted, however, that "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function of *Burnett* is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).

## III.   ALJ LOEWY'S DECISION

ALJ Loewy first determined that Plaintiff met the insured status requirement of the Act through December 31, 2015. (Tr. at 23). At step one of the analysis, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since July 9, 2011, the alleged onset date of Plaintiff's disability. (*Id.*).

At step two, the ALJ determined that Plaintiff suffered from multiple severe impairments: cirrhosis of the liver, hepatitis C, portal hypertensive gastrophy, and esophageal varices. (*Id.*). These impairments were found to "cause more than a minimal effect on the claimant's ability to perform basic work activities." (*Id.*). The ALJ determined, however, that Plaintiff's acid reflux was not a severe impairment. (*Id.*).

At step three, the ALJ found that Plaintiff did not have an "impairment or combination of impairments that m[et] or medically equal[ed] the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (*Id.* at 24). The ALJ pointed out that "[n]o treating, examining or consulting acceptable medical source has mentioned findings or opined that the severity of the claimant's medically determinable and severe impairments meets of equals a listed impairment." (*Id.*). First, the ALJ considered Listing 5.02 ("Gastrointestinal hemorrhaging from any cause, requiring blood transfusion") and found, among other things, that Plaintiff had not received blood transfusions at least three times during a consecutive 6-month period as is required by the listing. (*Id.*). The ALJ also considered Listing 5.05 ("Chronic liver disease"), but found that Plaintiff did not exhibit the requirements of any subsection of this listing. (*Id.*). Specifically, the ALJ found that Plaintiff did not meet the requirements of Listing 5.05A[2] because "the record does not show hemorrhaging resulting in hemodynamic instability and requiring hospitalization for transfusion of at least two units of blood." (*Id.*).

At step four, the ALJ determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except that Plaintiff could only occasionally use stairs and ramps. (*Id.*). The ALJ found that Plaintiff can never climb ladders, ropes, or scaffolds and can occasionally balance, stoop, kneel, crouch, and crawl. (*Id.*). The ALJ also determined that Plaintiff should avoid concentrated exposure to hazardous machinery and unprotected heights. (*Id.*) Finally, the ALJ found that Plaintiff was limited to jobs that required minimal-to-no reading. (*Id.*). Based on this RFC determination, the ALJ concluded that Plaintiff was unable to perform any past relevant work. (*Id.* at 28).

---

[2] Plaintiff contends that the ALJ did not "consider listing 5.05A specifically." (Pl. Mov. Br. at 11). The Court notes, however, that ALJ specifically mentioned the requirements of Listing 5.05A. *See* 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 5.05A.

At step five, the ALJ found that, based on Plaintiff's RFC and the testimony of the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including night cleaner, retail stock, and garment bagger.  (*Id.* at 29). Accordingly, the ALJ found that Plaintiff was not disabled, as defined in the Act, and Plaintiff was therefore ineligible for DIB.  (*Id.*).

## IV.   DISCUSSION

### A.  The Parties' Arguments

On appeal, Plaintiff argues that the ALJ's decision is not supported by substantial evidence. (*See* Pl. Mov. Br. at 9).  Plaintiff appeals the ALJ's determinations at steps three, four, and five. (*See id.* at 13-21).  In particular, Plaintiff contends that (i) the ALJ failed to consider Plaintiff's impairments in combination as required by step three (*id.* at 10, 13-16); and (ii) the ALJ's RFC determination was not supported by substantial evidence (*id.* at 16-21).  Plaintiff asks the Court to reverse the Commissioner's final administrative decision and order the payment of benefits.  (*Id.* at 9).  Alternatively, Plaintiff asks the Court to remand this case for a new hearing and a new decision.  (*Id.*).

Plaintiff argues that in her step-three analysis, the ALJ failed to "combine and compare" the totality of Plaintiff's impairments to determine if, when combined, they are medically equivalent to a listed impairment.  (*Id.* at 10, 13-16).  Specifically, Plaintiff argues,

> the ALJ's failure to appreciate the relationship between cirrhosis of the liver, hepatitis C, portal hypertension and esophageal varices, requiring four separate hospitalizations for hemorrhaging, blood transfusions, repeat banding and chronic inflammation in the duodenal bulb, requires a remand and a recommendation that the evidence be viewed once more, this time with the assistance and testimony of one of the Commissioner's medical experts.

(*Id.* at 10).  Plaintiff suggests that when all of his impairments are considered in combination, he either meets or medically equals Listing 5.05A or Listing 5.02.  (*See id.* at 15-16).

In response, Defendant first argues that Plaintiff failed to prove that he met the requirements of either Listing 5.02 or Listing 5.05A.  (*See* Def. Opp. Br. at 10-11).  Defendant notes that Plaintiff did not receive blood transfusions of at least two units of blood per transfusion occurring at least three times during a consecutive six-month period and occurring at least thirty days apart within the six-month period, as is required by Listing 5.02.  (*See id.* at 10).  Defendant also notes that Plaintiff did not meet Listing 5.05A because Plaintiff was diagnosed as hemodynamically stable after his blood transfusions.  (*Id.* at 10-11).  Defendant next contends that Plaintiff failed to establish that his combination of impairments medically equaled a listing.  (*Id.* at 11-12).  Defendant contends that, "[b]ecause two state agency physicians, who are considered experts in disability evaluation, concluded that Plaintiff did not meet or medically equal a listed impairment, the Court should reject Plaintiff's argument that remand is necessary for medical expert testimony on the issue of equivalence."  (*Id.* at 12).

### B. The ALJ Failed to Consider Whether the Combination of Plaintiff's Impairments Medically Equaled the Severity of a Listed Impairment

Generally, at step three, the ALJ must consider the medical severity of the claimant's impairment(s) and whether the impairment(s) "meets or equals one of [the] listings in appendix 1" of 20 C.F.R. Part 404, Subpart P.  *See* 20 C.F.R. § 404.1520(a)(4)(iii).  Although the claimant bears the burden of proving that his impairments meet those listed in Appendix 1, if a claimant's impairments do not meet the requirements of any listing, the ALJ is required to determine whether the combination of impairments is medically equal to any listed impairment.  *See Torres v. Comm'r of Soc. Sec.*, 279 F. App'x 149, 151-52 (3d Cir. 2008) (citing *Burnett*, 220 F.3d at 120 n.2; 20

C.F.R. § 404.1526(b)) (finding that "the ALJ failed at step three by failing to consider [the claimant's] impairments in combination when determining medical equivalence").

In conducting the medical equivalence analysis, the ALJ must consider if the combination of impairments "is at least equal in severity and duration to the criteria of any listed impairment." *See* 20 C.F.R. § 404.1526(a), (b).[3]  Further, the ALJ must set forth the reasons for her decision. *Burnett,* 220 F.3d at 119.  To be sure, an ALJ need not explicitly discuss every applicable listing or combination of impairments at step three, so long as the opinion, read as a whole, indicates that the ALJ considered the proper factors in arriving at her ultimate conclusion.  *See Jones*, 364 F.3d at 505.  But conclusory statements have been found to be "beyond meaningful judicial review." *Burnett,* 220 F.3d at 119; *Torres*, 279 F. App'x at 152.

Here, the Court finds that the ALJ's analysis of the combined effects of Plaintiff's impairments is inadequate.  The ALJ disposes of her combination analysis as follows:

> [t]he claimant does not have an impairment or combination of impairments that m[et] or medically equal[ed] the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 . . . .  No treating, examining or consulting acceptable medical source has mentioned findings or opined that the severity of the claimant's medically determinable and severe impairments meets or equals a listed impairment.

(Tr. at 24).  Given this analysis, the Court cannot determine what medical evidence the ALJ considered in reaching this conclusion or how the ALJ weighed the medical evidence when conducting her medical equivalence analysis.  *Cf. Torres*, 279 F. App'x at 152 ("There is no way

---

[3]     20 C.F.R. § 404.1526(b)(3) specifically addresses a medical equivalence analysis for a combination of impairments:

> If you have a combination of impairments, no one of which meets a listing . . . , we will compare your findings with those for closely analogous listed impairments. If the findings related to your impairments are at least of equal medical significance to those of a listed impairment, we will find that your combination of impairments is medically equivalent to that listing.

to review the ALJ's decision in this case because no reasons were given for his conclusion that [the claimant's] impairments in combination did not meet or equal an Appendix 1 listing."). Although the ALJ explains why Plaintiff's impairments do not meet the Appendix 1 listings *individuall*y, she does not discuss the ways in which Plaintiff's combination of impairments is not "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a).

Namely, Listing 5.05A requires three criteria: (i) hemorrhaging from esophageal, gastric, or ectopic varices or from portal hypertensive gastropathy; (ii) hemodynamic instability;[4] and (iii) hospitalization for transfusion of at least two units of blood. *See* 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 5.05A. Here, medical evidence in the record reveals diagnoses of gastrointestinal hemorrhaging, as well as esophageal varices and portal hypertension (*see, e.g.*, Tr. at 357) and that Plaintiff received a transfusion of at least two units of blood (*id.* at 375, 443). While medical evidence indicates that Plaintiff was "hemodynamically stable" upon discharge after two of his hospitalizations (*id.* at 266, 358), the ALJ did not explain whether the import of any of Plaintiff's other established impairments would support a finding that Plaintiff's combination of impairments is at least as medically significant as this criterion.[5] Accordingly, the Court finds that the ALJ failed to provide an "explanation of findings to permit meaningful review" of her analysis on the combined effects of Plaintiff's impairments. *See Jones*, 364 F.3d at 505.

Finally, the Court finds that Defendant's contention that the opinions of the two state-agency physicians established that Plaintiff's combination of impairments did not medically equal

---

[4]   "[H]emodynamic instability is diagnosed with signs such as pallor (pale skin), diaphoresis (profuse perspiration), rapid pulse, low blood pressure, postural hypotension (pronounced fall in blood pressure when arising to an upright position from lying down) or syncope (fainting)." 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 5.00D.

[5]   In support of the severity of his combination of impairments, Plaintiff points to the variety of diagnoses, as well as Plaintiff's multiple blood transfusions and hospitalizations due to his impairments. (*See* Pl. Mov. Br. 10-12)

a listing is unavailing for three reasons. (*See* Def. Opp. Br. at 12). *First*, the ALJ does not cite to these opinions in her step-three analysis, and the Court declines to speculate that these opinions were the basis for the ALJ's conclusions. (*See* Tr. at 24). *Second*, both these physicians apparently only considered if Plaintiff's impairments met or equaled the criteria for Listing 5.02. (*Id.* at 95, 105). But, as discussed above, it is unclear whether Plaintiff's impairments—in combination—medically equaled the criteria of Listing 5.05A. *Third*, as Plaintiff aptly notes, the state-agency physicians issued their reports on January 18, 2012 and June 5, 2012, such that no medical records after these dates were considered by these physicians. (*See* Pl. Mov. Br. at 12). Indeed, the record appears replete with medical evidence that was not considered by either state-agency physician, including reports regarding: (i) Plaintiff's visit with Dr. Arrigo on June 1, 2012 (Tr. at 624);[6] (ii) Plaintiff's EGD test on July 25, 2012 (*id.* at 556); (iii) Plaintiff's EGD test on August 22, 2012 (*id.* at 590); and (iv) Plaintiff's visit with Dr. Arrigo on November 7, 2012 (*id.* at 539).[7]

Defendant cites to Social Security Ruling ("SSR") 96-6p for the proposition that the state-agency physicians' "signatures on the Disability Determination and Transmittal form indicate that they considered whether Plaintiff's impairments medically equaled a listing." (Def. Opp. Br. at 11-12 (citing SSR 96-6p, 1996 WL 374180 at *3)). But SSR 96-6p also provides that

> an administrative law judge and the Appeals Council must obtain an updated medical opinion from a medical expert . . . [w]hen additional medical evidence is received that in the opinion of the administrative law judge or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.

---

[6]     Although Plaintiff visited Dr. Arrigo prior to the second state-agency physician issuing the report, the state-agency physician was not provided any records from this June 1, 2012 appointment to review when issuing the report. (*See* Tr. at 104).

[7]     Indeed, at step four, the ALJ assigned Plaintiff additional limitations to those suggested by the state-physicians based on some of this more recent evidence. (*See* Tr. at 27).

*Id.* at *4.

Here, based on the step-three discussion, the Court cannot determine whether the ALJ concluded that the medical evidence that was *not* considered by the state-agency physicians would have affected their conclusions that Plaintiff's impairments did not medically equal a listing.  As Plaintiff argues, an updated medical opinion from a medical expert may be necessary to accurately determine whether Plaintiff's *combination* of impairments medically equals the criteria of any listing.  (*See* Pl. Mov. Br. at 10).  For these reasons, the Court is unable to conclude that these state-agency physicians' opinions constitute substantial evidence supporting that Plaintiff's combination of impairments do not medically equal a listing.

## V.    CONCLUSION

For the foregoing reasons, the Court remands this case so that the ALJ can provide a step-three analysis that allows for meaningful judicial review.  In doing so, the ALJ should address the combined effects of Plaintiff's individual impairments and detail whether the combination of all of Plaintiff's impairments is medically equivalent in severity to a listed impairment.[8]  Pending the outcome of this combination analysis at step three, the ALJ should reconsider her determinations at steps four and five.

In sum, the Court vacates ALJ Loewy's decision and remands the case for further proceedings consistent with this Opinion.  An appropriate Order accompanies this Opinion.

*s/ Esther Salas*
**Esther Salas, U.S.D.J.**

---

[8]     As discussed above, this analysis may require the ALJ to obtain an updated medical opinion from a medical expert regarding whether Plaintiff's combination of impairments medically equals the severity of a listing.